UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDRE MOTON, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00005-JMS-TAB |
| | ) | |
| ALLEN, *Warden*, | ) | |
| | ) | |
| *Respondent*. | ) | |

**ORDER**

Petitioner Andre Moton has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. He challenges a prison disciplinary proceeding in which he was found guilty of battery against staff and sanctioned with a loss of 45 days of phone/commissary/login privileges, 180 days in the restricted housing unit, and a loss of 180 days of earned credit time. [Filing No. 8-6 at 1.] He has now filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Filing No. 1.] For the reasons explained below, the Court **DENIES** the Petition.

I.
LEGAL BACKGROUND

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

1

## II.
### FACTUAL BACKGROUND

On June 22, 2024, Sgt. M. Benevides charged Mr. Moton with Offense 117, Battery Against Staff, writing in a Conduct Report as follows:

> On 6/22/2024 At 150 I Sgt. M. Benevides was assisting Sgt. M. Saxon with the removal of I Bennett, Nalakeio from his cell when his neighbor in cell 8 on 2D I.I. Moton Andrew spit at me [striking] me in the left leg. At this time, we were able to remove I.I. Bennett from his cell without further issue.

[Filing No. 8-1 at 1.]

This charge was among three other charges for battery, one charge for body fluids and fecal waste, and one charge for threatening all on the same day. [Filing No. 8-2 at 1.] Prison Psychologist Dr. K. McCafferty indicated that Mr. Moton's behavior was not driven by mental health issues. [Filing No. 8-2 at 1.]

At screening, Mr. Moton was unable to sign his acknowledgement of the Conduct Report because he was already in the restricted housing unit. [Filing No. 8-1 at 2.] He requested a lay advocate, did not request any witnesses, but did request camera review of the footage documenting the incident. [Filing No. 8-3 at 1.] On July 26, 2024, Hearing Officer Sgt. J. Womack reviewed the video footage and produced a summary as follows:

> I, Sgt. J. Womack, reviewed video footage for case ISR-24-06-001859. At 1:46am, both Sgt. M. Saxon and Sgt. N. Saxon can be seen walking onto the 2D range and speaking with the I.I. housed in cell 9-2D. As they speak with him, Sgt. Benevides and another officer enter the range. The other officer then exits the range. Sgt. M. Saxon opens the cuff port to cell 9-2D. As the three Sgt. continue to stand there, they can be seen speaking with the I.I. in cell 8-2D. Sgt. N. Saxon goes to grab his DC spray, but does not pull it out. At 1:46:56, Sgt. Benevides pulls out his OC spray and points it at cell 8-2D. The other officer then returns to the range carrying a set of handcuffs with a security lead attached. They then cuff the I.I. in cell 9-2D and escort him off the range.

[Filing No. 8-7 at 1.]

2

Mr. Moton again was unable to sign his acknowledgement of receiving the video summary because he was still already in the restricted housing unit. [Filing No. 8-7 at 1.]

At the disciplinary hearing, Mr. Moton pleaded not guilty and made no statement. [Filing No. 8-6 at 1.] Based on the available evidence, Hearing Officer Womack found Mr. Moton guilty and sanctioned him with a loss of 45 days of phone/commissary/login privileges, 180 days in the restricted housing unit, and a loss of 180 days of earned credit time. [Filing No. 8-6 at 1.]

Mr. Moton appealed to the Facility Head and the Final Reviewing Authority, and both his appeals were denied. [Filing No. 8-8 at 1; Filing No. 8-9 at 1.] He has now filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Filing No. 1.] He makes numerous arguments, including that he was denied the ability to prepare a defense, that he was subject to double jeopardy, that he experienced cruel conditions of confinement, that prison policies were violated, that his mental health was improperly not considered during the proceedings, that he was denied a right to counsel, and that he was denied the right to an impartial decisionmaker.

## III.
### DISCUSSION

#### A. Ability to Prepare a Defense

Mr. Moton argues that he was "placed on strip cell prior to screening or a hearing for this conduct report," and he was "deprived of all legal research materials, books, personal papers, [and] law library" access. [Filing No. 1 at 4.] As a result, Mr. Moton argues that he was denied his due process right "to prepare a proper defense." [Filing No. 1 at 4.] He states further that his mental health condition meant that he was not "in [the] right state of mind" because of "medication issues & living in a very degrading & toxic environment" and having been deprived of "any & all research material." [Filing No. 1 at 7.]

The Respondent states that "[t]o the extent [Mr.] Moton argues that his placement in strip cell search and lack of access to the law library impeded his ability to prepare a defense . . . he failed to show how." [Filing No. 8 at 10.] The Respondent notes that Mr. Moton had the ability to request witnesses and evidence and chose not to make a statement at his hearing. [Filing No. 8 at 10.] Any error, the Respondent argues, would be harmless. [Filing No. 8 at 10-11.]

Mr. Moton did not file a reply.

The Court observes that "[p]rison disciplinary hearings, like the one at issue in this case, are not criminal prosecutions and the full panoply of rights accorded criminal defendants are not available." *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994). Indeed, the Seventh Circuit has warned that courts must "not . . . add to the procedures required by *Wolff,* which . . . represents a balance of interests that should not be further adjusted in favor of prisoners." *White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001). Mr. Moton provides no authority that he was entitled to access a law library or research materials, and in any event, his request and actual receipt of evidence demonstrates that he had access to material to prepare his defense.

Mr. Moton is not entitled to habeas relief on the ground that he was unable to prepare a defense.

### B.     Double Jeopardy, Conditions of Confinement, and Prison Policy

Mr. Moton argues in an interconnected challenge that the Respondent violated prison policy by sanctioning him before his disciplinary hearing and a finding of guilty, and depriving him of "all recreation, legal material, personal papers, books, religious material, mail & law library [access] & . . . 3 frozen meals daily." [Filing No. 1 at 3.] Mr. Moton states that the Respondent sanctioned him with more lost days of tablet-and-kiosk access than was allowed under prison policy. [Filing No. 1 at 6.] He states further that given his mental health issues, these sanctions were intended to be humiliating, degrading, and vengeful. [Filing No. 1 at 3-4.] He argues that

4

because he was sanctioned before and after his disciplinary hearing, he was "given more excessive sanctions," subjecting him to "double jeopardy as [he] was punished twice[.]" [Filing No. 1 at 4.]

The Respondent argues that a violation of prison policy does not entitle a prisoner to habeas relief. [Filing No. 8 at 9.] The Respondent states that to the extent Mr. Moton contests his experience in a strip cell, those are challenges to the conditions of his confinement, which are not appropriate for a habeas proceeding. [Filing No. 8 at 10.] The Respondent also argues that there is no protection against double jeopardy in prison disciplinary proceedings. [Filing No. 8 at 11.]

Mr. Moton did not file a reply.

The Court first notes that a prison or jail disciplinary action can be challenged in a habeas corpus proceeding only where it concerns the fact or duration of the petitioner's custody, so Mr. Moton cannot pursue a habeas challenge over the loss of his tablet privileges, regardless of when that loss occurred. *Hadley v. Holmes,* 341 F.3d 661, 664 (7th Cir.2003). Additionally, a violation of IDOC policy during a disciplinary proceeding is not a basis for habeas relief. *See, e.g.*, *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"). To the extent Mr. Moton is challenging his experience in the strip cell, that is a challenge to his conditions of confinement, and "a prisoner challenging a condition of his confinement . . . must seek relief under 42 U.S.C. § 1983." *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004). Finally, "double jeopardy protections do not attach in prison disciplinary proceedings." *Portee v. Vannatta*, 105 F. App'x 855, 858 (7th Cir. 2004).

5

Mr. Moton is not entitled to habeas relief regarding double jeopardy, conditions of confinement, or violations of prison policy.

### C.     Mental Health

Mr. Moton argues that he "is classified as being seriously mentally ill with a mental health code," so he was supposed to be "contacted prior to screening & hearing" to see if mental health was the real cause of his conduct. [Filing No. 1 at 5.] He argues that the prison "has a habit of saying they" contacted appropriate mental health officials yet those same officials "often say[] they don't recall being contacted." [Filing No. 1 at 5.] He argues further that after he was found guilty, "his mental health wasn't considered in giving sanctions," which was required because of a pre-existing "mental health agreement" that stipulates he should not have been given "more than 30 days' segregation." [Filing No. 1 at 5.]

The Respondent argues that mental health officials actually were contacted, and they "indicated that [Mr.] Moton's mental health was not the cause of his behavior." [Filing No. 8 at 13.] The Respondent argues further that Mr. Moton had "no due process right to have mental health consulted before he was found guilty, and the [C]ourt cannot expand on the due process protections set out in *Wolff*." [Filing No. 8 at 13.]

Mr. Moton did not file a reply.

To the extent that an alleged agreement to limit sanctions was violated, as the Court has explained, violations of prison policy are not grounds for habeas relief. *Keller*, 271 F. App'x at 532. Additionally, the Court must "not . . . add to the procedures required by *Wolff*, which . . . represents a balance of interests that should not be further adjusted in favor of prisoners." *White*, 266 F.3d at 768. That means there is no "right to present mitigating arguments prior to a discretionary decision on good time credit revocation." *Hawkins v. Vanihel*, No. 23-3352, 2024 WL 3251289, at *3 (7th Cir. July 1, 2024) (quoting *Love v. Vanihel*, 73 F.4th 439, 451-52 (7th Cir.

6

2023)). This includes a supposed right to consider Mr. Moton's mental health to mitigate his sanctions.

Mr. Moton is not entitled to habeas relief on the basis of his arguments regarding his mental health.

### D. Denial of Counsel

Mr. Moton argues that because of his mental health issues, he should have had "assistance from substitute counsel to prepare a proper defense." [Filing No. 1 at 5.]

The Respondent argues that Mr. Moton "failed to exhaust his denial-of-counsel claim" and that in any event, he has "no due process right to counsel in a prison disciplinary case." [Filing No. 8 at 6-8.]

Mr. Moton did not file a reply.

Normally, the Court would analyze the issue of exhaustion first, but in this case, the merits are simple to resolve: "[I]nmates do not 'have a right to either retained or appointed counsel in disciplinary hearings.'" *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976) (quoting *Wolff*, 418 U.S. at 570).

Mr. Moton is not entitled to habeas relief on the grounds that he was unlawfully denied access to counsel.

### E. Impartial Decisionmaker

Mr. Moton argues that "it wasn't possible to have an impartial hearing" because "when [he] was screened & had [his] hearing for said conduct," he was already serving his strip cell punishment for the same conduct, which necessarily means the Respondent presupposed his guilt. [Filing No. 1 at 4.]

The Respondent argues that Mr. Moton "was not deprived of an impartial decisionmaker." [Filing No. 8 at 11.] The Respondent states that Hearing Officer Womack "was not involved in

7

the conduct or investigation leading to the charge and [Mr.] Moton does not show that there were any circumstances outside the disciplinary process that called into question her impartiality." [Filing No. 8 at 12.] The Respondent argues further that "being placed on strip cell search is an administrative tool used independently of the disciplinary process." [Filing No. 8 at 13.]

Mr. Moton did not file a reply.

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary in order to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). "To overcome that presumption, [a prisoner] need[s] to present clear evidence of bias." *Nelson v. Stevens*, 861 F. App'x 667, 670 (7th Cir. 2021). This presumption can be rebutted when a petitioner provides "specific allegations" and other evidence of a decisionmaker's bias in his particular case. *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (cited by *Higgason v. Lemmon*, 6 Fed. App'x 433, 435 (7th Cir. 2001) (applying *Bracy* to deny habeas relief regarding impartial decisionmaker)). Hence while a disciplinary hearing officer can make statements indicating "he [is] confident in the charges . . . lodged against" the prisoner, it is unconstitutional for a disciplinary hearing officer "to predetermine the hearing outcome" notwithstanding the evidence. *Prude v. Meli*, 76 F.4th 648, 660 (7th Cir. 2023). "No reasonable official could believe that predetermining the outcome of a disciplinary hearing—no matter how that is accomplished—is consistent with due process." *Id.* "[A]llegations of bias" are a question of fact for the Court. *See id.* at 658.

There is no evidence that Hearing Officer Womack had any connection to Mr. Moton's placement into a strip cell even if it were a sanction. It is also generally not improper to move a

prisoner to more restrictive housing while awaiting adjudication over an assault, such as the one in this case and the others alleged against him. Regardless, the Court's oversight of a prison disciplinary proceeding extends only to sanctions affecting the fact or duration of a prisoner's sentence; placement into more restrictive confinement conditions is not appropriate for a habeas proceeding. *Cochran*, 381 F.3d at 639.

Mr. Moton is not entitled to relief on the ground that he was unlawfully denied an impartial decisionmaker.

## IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in Mr. Moton's case, and there was no constitutional infirmity in the proceeding that entitles him to the relief he seeks. Accordingly, Mr. Moton's Petition for a Writ of Habeas Corpus, [1], is **DENIED**, and the action is dismissed.

Final judgment shall issue by separate order.

Date: 5/15/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

ANDRE MOTON
231926
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov